**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVEN L. ZIRKO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 10 C 08135** |
| **PARTHASARATHI GHOSH, M.D.,** | ) | |
| **CATALINO BAUTISTA, M.D.,** | ) | **Judge John J. Tharp, Jr.** |
| **MARCUS HARDY, KAREN** | ) | |
| **RABIDEAU, PHYLLIS BAKER, and** | ) | |
| **UNKNOWN DEPARTMENT OF** | ) | |
| **CORRECTIONS OFFICIALS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Steven L. Zirko is a prisoner incarcerated at Stateville Correctional Center ("Stateville"), Joliet, Illinois. In his Third Amended Complaint, Plaintiff Zirko alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs and state law claims of willful and wanton conduct against Defendants Parthasarathi Ghosh, M.D. and Catalino Bautista, M.D., who both served as the medical director at Stateville, and Marcus Hardy, the current Warden of Stateville. The plaintiff also alleges that Karen Rabideau, a Stateville Placement Officer and Correctional Counselor, Phyllis Baker, a Stateville Library Associate, and other unknown officials retaliated against him for engaging in First Amendment activities by failing to extend his employment assignment as an inmate law clerk and librarian.

Now before the Court are two motions—the first by Defendant Drs. Ghosh and Bautista to dismiss the claims against them, and the second by Defendants Hardy, Rabideau, and Baker

for leave to file a "Prisoner Litigation Reform Act ('PLRA') Answer." For the reasons set forth below, both motions are denied in their entirety.

## I.      BACKGROUND

The following facts and allegations are taken from the plaintiff's Third Amended Complaint and, for purposes of evaluating this motion only, are taken as true. *See* Dkt. 96.

### A.  Lack of Medical Care

Plaintiff Zirko was taken into the custody of the Illinois Department of Corrections ("IDOC") on July 23, 2009 and housed at Stateville. Upon his initial entry to Stateville, the plaintiff received a medical examination. At this examination, the plaintiff alleges that he informed prison staff that he suffered from a medical condition that required treatment, namely, three herniated spinal discs. Zirko alleges that without proper treatment, the herniated discs in his back caused him to suffer severe pain and numbness in his legs.

The prison staff instructed the plaintiff to make an appointment with Defendant Dr. Ghosh, Stateville's medical director at the time, because only Dr. Ghosh had the authority to prescribe the necessary treatment. The plaintiff alleges that immediately after his July 23, 2009 examination he made several written and oral requests for an appointment with Defendant Dr. Ghosh. On September 23, 2009, the plaintiff was examined by Stateville's non-physician medical staff. At this appointment, Zirko informed the staff that he was in extreme pain and that he had not received any medical treatment since arriving at Stateville two months earlier. The examining staff prescribed Zirko pain medication, which failed to alleviate his back pain. As noted below, the plaintiff also made his second request for an emergency appointment with Dr. Ghosh at this time.

Zirko alleges that due to his excruciating back pain he continued to request appointments with the medical director. According to the complaint, he requested emergency appointments to see Defendant Dr. Ghosh on: September 7, 2009; September 23, 2009; October 6, 2009; October 22, 2009; November 2, 2009; November 16, 2009; December 8, 2009; December 28, 2009; January 4, 2010; January 18, 2010; and February 1, 2010. This is approximately two requests per month for six months, during which time Dr. Ghosh did not examine or provide the plaintiff with medical treatment.

On January 16, 2010 and during the period in which these requests for an emergency appointment were being made, the plaintiff alleges that, due to the untreated herniated spinal discs, his legs went numb as he was climbing into the top bunk of his bed. The plaintiff alleges that he fell and struck his jaw on a table, causing him extreme pain, which continues to this date. As noted below, Dr. Ghosh did not examine the plaintiff's jaw injury until April 4, 2010, approximately three months after that injury occurred.

On February 8, 2010, Zirko filed a grievance over lack of medical care and his unfulfilled requests for an appointment with Defendant Dr. Ghosh. The plaintiff alleges that this grievance has been fully exhausted within the IDOC's grievance procedures. On March 3, 2010, non-physician staff examined the plaintiff again, at which time he advised the staff that he was still in extreme pain and having trouble climbing into his top bunk due to the numbness in his legs. The staff prescribed Zirko a back brace and pain medication, which the plaintiff contends failed to alleviate his pain. On March 4, 2010, Dr. Liping Zhang examined Zirko for conditions unrelated to his back pain. Dr. Zhang informed Zirko that she could not do anything for his back pain, and that he should continue requesting appointments with Defendant Dr. Ghosh.

On March 10, 2010, Zirko filed another grievance for lack of medical care and unfulfilled requests to see Dr. Ghosh. The plaintiff contends that this grievance has also been fully exhausted. Non-physician medical staff examined Zirko on March 13, 2010, at which time Zirko complained of continuing back pain and numbness in his legs. The staff then referred Zirko to Dr. Ghosh for a medical appointment on March 17, 2010 and issued him a temporary low-bunk permit.

Over eight months after Zirko's initial request, on April 4, 2010, Dr. Ghosh examined the plaintiff for his jaw injury.[1] However, Dr. Ghosh made no diagnosis and prescribed no medication for that injury. Five weeks later, on May 13, 2010, Dr. Ghosh examined the plaintiff for his back pain. Dr. Ghosh scheduled an appointment at the University of Illinois at Chicago Medical Center ("UICMC") on June 30, 2010 so that magnetic resonance imaging ("MRI") could be taken of the plaintiff's spine. During this appointment, Zirko alleges that he also complained to Dr. Ghosh about jaw pain, but that Dr. Ghosh ignored those complaints, did not examine his jaw, and, again, did not prescribe any treatment for that injury.

On June 30, 2010, the date of the MRI at UICMC, Zirko alleges that his intense back pain prevented him from lying down for the required 30 minutes needed to complete the procedure. Non-physician medical staff examined Zirko on July 7, 2010, at which time the plaintiff complained of back and jaw pain and negative side effects of the pain medication he had been prescribed. Zirko alleges that the staff ignored his complaints and failed to provide him with alternative medical treatment. According to the complaint, he filed a third grievance on July 15,

---

[1] The Court cannot discern from the complaint why Dr. Ghosh did not examine the plaintiff's back at this initial appointment. The facts, as alleged, indicate only that Dr. Ghosh examined the plaintiff's jaw on April 4, 2010, but did not examine his back until May 13, 2010.

2010 over the medical care he requested on July 7, but did not receive, and his many unfulfilled requests to see Defendant Dr. Ghosh. Zirko again alleges that this grievance has been exhausted.

Almost two months after his initial attempt, Zirko completed an MRI at UICMC on August 13, 2010. The results of the MRI showed that the plaintiff had three herniated discs in his back, just as Zirko had informed the medical staff upon his arrival at Stateville more than a year earlier. Dr. Ghosh examined Zirko on August 31, 2010 to discuss the MRI results. Dr. Ghosh then prescribed extra mattresses, pain medication, and treatment at the UICMC pain clinic. However, the pain medication failed to alleviate Zirko's pain, and the prison staff refused to provide the extra mattresses that Dr. Ghosh had authorized.

Zirko filed grievances on September 28 and October 18, 2010 based on the prison staff's failure to provide the authorized extra mattresses. Zirko alleges that these grievances have been fully exhausted. On October 29, 2010, Zirko filed another grievance over the extra mattresses, which the plaintiff alleges has also been fully exhausted.

Dr. Ghosh approved Zirko for an epidural steroid injection for his back pain on November 8, 2010. However, Zirko never received this injection. Non-physician staff examined Zirko on December 14, 2010, at which time he again complained of back and jaw pain. At this point, Zirko had not received the epidural steroid shot prescribed by Dr. Ghosh over a month prior.

According to Zirko, after suffering another month of severe pain, he filed a grievance on January 11, 2011 over lack of medical care and unfulfilled requests for appointments with Dr. Ghosh. Dr. Ghosh examined Zirko on January 21, 2011 for his back and jaw pain. Dr. Ghosh again prescribed a steroid injection, which, again, the plaintiff never received. Dr. Ghosh also wrote a permit for a low bunk, double mattresses, extra pillows, a back brace, a wrist support,

and a table and chair for Zirko's cell. *See* Dkt. 1, at 23 ("Stateville Correctional Center Medical Permit"). However, Dr. Ghosh subsequently voided that medical permit, and Zirko filed a grievance on February 2, 2011 as a result.

On March 4, 2011—almost four months after it was first prescribed by Dr. Ghosh—Zirko was sent to the UICMC for an epidural steroid injection in his back. The injection had a positive, but temporary, effect. Zirko requested a follow-up appointment with Dr. Ghosh, but did not receive one. According to Zirko, he then requested several unfulfilled follow-up appointments with Dr. Ghosh. Approximately two months later, on May 20, 2011, Zirko filed a grievance for lack of medical care and unfulfilled requests for a medical appointment with Dr. Ghosh after the March 4 epidural steroid injection.

On June 2, 2011, Stateville non-physician medical staff examined Zirko. The plaintiff alleges that he requested an appointment with Dr. Ghosh at this time and was told that he would receive the next available appointment. However, Defendant Dr. Ghosh never examined Zirko again before he retired as Stateville's medical director.

On June 27, 2011, Dr. Bautista examined Zirko after taking over as Stateville medical director. At this appointment, Zirko described his untreated medical conditions and back and jaw pain. According to the plaintiff, Dr. Bautista ignored his jaw pain, did not examine the injured jaw, and did not prescribe any treatment. The complaint does not indicate whether Dr. Bautista treated Zirko for his herniated discs, which at this point had been diagnosed. At the time of the filing of the Third Amended Complaint, the plaintiff alleges that he continues to have jaw pain and experiences difficulty in obtaining adequate and necessary medical care.

### B.  Retaliation

According to Zirko's complaint, he began working as a law clerk and librarian at the Stateville library in June 2010. Around the same time, inmates Andre Jones and Melvin Centeno also began working as law clerks and librarians. Zirko alleges that Defendant Rabideau is a Placement Officer and Correctional Counselor at Stateville, coordinates inmate employment positions, and participated in deciding whether to extend the employment assignments for the inmate law clerks during the relevant period. Defendant Baker is a library associate responsible for the day-to-day management of the law library, and also participates in the decisions whether to extend employment positions for law clerks.

Zirko alleges that, in June 2011, Defendants Rabideau and Baker failed to extend his employment as a law clerk and librarian in retaliation for the grievances he filed. Defendant Rabideau reviewed at least two of these grievances, filed on February 8 and March 3, 2010. The plaintiff initiated this action, which named Defendant Rabideau as a party, on December 22, 2010. According to the plaintiff, Defendants Rabideau and Baker explained that his employment assignment was not extended because employment assignments only last one year, unless extended by a supervisor. Zirko alleges that although he did not receive an extension, both Jones and Centeno did. Additionally, Defendants Rabideau and Baker renewed the employment assignments for most, if not all, of the other inmates working in positions under their authority. On June 21, 2011, Zirko filed a grievance contesting what he alleges was discriminatory and retaliatory conduct. The plaintiff alleges that this grievance has been fully exhausted.

Zirko requests injunctive relief and monetary damages. In the form of injunctive relief, the plaintiff requests: (1) an examination by a physician every month (regardless of any prison lockdowns or security measures); (2) physical therapy, hydrotherapy, chiropractic treatment,

pain treatment, and treatment for his injured jaw; (3) reinstatement of his employment as a law clerk and librarian; and (4) fulfillment of all medical permits he has or will have. In the alternative to injunctive relief, the plaintiff requests damages of $500 per month for every month he does not receive the medical treatment specified, in addition to lost pay caused by his termination as a law clerk and librarian. Further, Zirko requests attorneys' fees, litigation costs, monetary damages, and other relief deemed appropriate by the Court.

## II.    ANALYSIS

In his Third Amended Complaint, Zirko asserts a claim of deliberate indifference to his serious medical needs under 42 U.S.C. § 1983 against Defendants Hardy (Count II), Ghosh, and Bautista (Count I). Zirko also asserts a state law tort claim of willful and wanton conduct against those same defendants (Counts III and IV). Further, Zirko asserts a claim of retaliation against Defendants Rabideau, Baker, and unknown IDOC officials for the termination of his employment assignment as an inmate law clerk and librarian (Count V).

Before the Court are motions to dismiss brought by Defendant Drs. Ghosh and Bautista and for leave to file a PLRA answer brought by Defendants Hardy, Rabideau, and Baker.

### A.  Motion to Dismiss Claims against Defendants Ghosh and Bautista

Defendant Drs. Ghosh and Bautista contend that Zirko's complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, a "complaint must contain enough facts to state a claim for relief that is plausible on its face." *Citadel Group Ltd. v. Washington Regional Medical Center,* 692 F.3d 580, 591 (7th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim satisfies this pleading

standard when its factual allegations 'raise a right to relief above the speculative level." *Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 635 (7th Cir. 2012) (citing *Twombly,* 550 U.S. at 555-56; *Swanson v. Citibank,* 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the Court construes the motion in the light most favorable to the plaintiff, accepts all of the plaintiff's well-pleaded facts as true, and draws all reasonable inferences in the plaintiff's favor. *See Citadel Group Ltd.,* 692 F.3d at 591 (citing *Iqbal,* 556 U.S. at 678). Further, the Court "may consider documents attached to or referenced in the pleading if they are central to the claim." *Id.* (citing *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012)).

### 1. Deliberate Indifference to a Serious Medical Need

First, Defendant Drs. Ghosh and Bautista argue that the injunctive relief sought by Zirko is moot because neither doctor currently serves as the medical director at Stateville, and therefore are not in a position to comply with a Court order. Second, Defendant Drs. Ghosh and Bautista argue that the plaintiff "has received medications, diagnostic testing and epidural steroid injections to help alleviate his back pain," Dkt. 107, at 3, and that "[d]issatisfaction or disagreement with the method of treatment or the inability to effect a final cure does not suggest that those who treated an inmate exhibited deliberate indifference." *Id.* Therefore, according to the defendants, the plaintiff's claim of deliberate indifference should be dismissed.

As an initial matter, the plaintiff has sued Defendants Drs. Ghosh and Bautista in their official capacity as the Stateville medical directors. Accordingly, if the plaintiff is awarded prospective injunctive relief, the current medical director may be substituted as a party. *See* Fed R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official

capacity…ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."). Accordingly, the Court "may order substitution at any time, but the absence of such an order does not affect the substitution." *Id.* Furthermore, the plaintiff has requested monetary damages pursuant to § 1983. Therefore, the Court rejects the defendants' argument that the claim should be dismissed because they are no longer medical directors at Stateville.

The Eighth Amendment prohibits cruel and unusual punishment. *See Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006). "The Supreme Court has interpreted this prohibition, as incorporated through the Fourteenth Amendment, as imposing a duty on states 'to provide adequate medical care to incarcerated individuals.'" *Id.* (citing *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006), quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). "Prison officials fail in this duty 'if they display deliberate indifference to serious medical needs of prisoners.'" *Id.* (citations and quotations omitted). Accordingly, to state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a complainant must demonstrate two elements: "(1) an objectively serious medical condition, and (2) deliberate indifference by the prison officials to that condition." *Id.* (citing *Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir. 2000)).

Zirko alleges that prior to and since incarceration at Stateville he has suffered from three herniated spinal discs, which left untreated, caused him to fall and injure his jaw. The Seventh Circuit has taught that "[a]n objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 584-85 (citing *Zentmyer,* 220 F.3d at 810,

10

quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)). Further, a "serious medical condition" need not be life-threatening, *id.* (citing *Gutierrez,* 111 F.3d at 1370), but should constitute "a denial of 'the minimal civilized measure of life's necessities.'" *Id.* (citing *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999), quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1970)). Alone, the plaintiff's herniated spinal discs, which have caused severe pain and neurological symptoms, qualify as a serious medical condition. *See, e.g., Ceparano v. Suffolk County Dept. of Health,* No. 10-4774-pr., 2012 WL 2213681, at *2 (2d Cir. 2012); *Faraday v. Lantz,* No. 03-CV-1520, 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005); *Starbeck v. Linn County Jail,* 871 F. Supp. 1129, 1145 (N.D. Iowa 1994). Further, a "prisoner's medical need is 'serious' where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008). In other words, as the Seventh Circuit has taught, a serious medical need exists where the complainant experiences "chronic and substantial pain." *Id.* at 522-23. Zirko alleges that his back condition has not only caused, and continues to cause, excruciating pain, but also resulted in further injury to his jaw. Furthermore, Zirko alleges that the jaw injury has also caused, and continues to cause, substantial amounts of pain. Accordingly, Zirko has sufficiently alleged the first element of a claim of deliberate indifference, a "serious medical need."

As to the second element, the plaintiff alleges that he informed Stateville staff of his herniated spinal discs upon incarceration, filed approximately two requests for emergency appointments with the medical director per month for more than six months, was not examined by the medical director for his herniated discs until approximately nine months after his initial request, and filed several grievances for lack of medical care and unfulfilled requests for

appointments during that extended time period.[2] Zirko also alleges, as noted above, that he continued to experience excruciating pain and suffered a jaw injury as a result of his medical condition while waiting to receive an examination by the medical director. "Deliberate indifference is a subjective standard," *Snyder,* 444 F.3d at 585, that "is more than negligence and approaches intentional wrongdoing." *Id.* It "is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (citing *Farmer,* 511 U.S. at 837). Therefore, the deliberate indifference "standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need." *Id.* (citing *Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir. 2004).

That said, "a prisoner is not required to show that he was literally ignored." *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010) (citing *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000)). As the *Sherrod* court explained, the "question mandated by *Farmer* is whether the official knew of and disregarded an excessive risk to the inmate's health, not whether the inmate was ignored." *Sherrod,* 223 F.3d at 612. Further, and more pertinent to the facts and allegations of Zirko's claim, a "significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry,* 604 F.3d at 441 (citing *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days), citing *Peters,* 111 F.3d at 1371-72 & n. 6). Moreover, "a non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing that the delay aggravated the underlying condition." *Id.* (citing *Grieveson,* 538 F.3d at 779).

---

[2] According to the complaint, Dr. Ghosh examined the plaintiff for the first time on April 4, 2010, over eight months after his initial request for an appointment. However, according to Zirko, during this appointment Dr. Ghosh only examined the jaw injury, but made no diagnosis and provided no treatment specific to the jaw injury.

It is reasonable for this Court to infer, based on the number of requests for emergency appointments and grievances filed by the plaintiff, in addition to the referrals for appointments made by the Stateville non-physician staff, that Dr. Ghosh was subjectively aware of the plaintiff's complaints of back pain and related injuries. The non-physician staff referred Zirko to an appointment with Dr. Ghosh on March 17, 2010. However, Dr. Ghosh did not see Zirko until April 4, 2010, over three weeks after that referral, and only then for his jaw injury. *See, e.g., Grieveson,* 538 F.3d at 779 (two-day delay of medical treatment for a broken nose adequate to survive summary judgment); *Cooper v. Casey,* 97 F.3d 914 (7th Cir. 1996) (affirming jury verdict for plaintiffs alleging a two-day delay of medical treatment for cuts, severe muscular pain, and a burning sensation in the eyes and skin caused by mace); *see also Peters,* 111 F.3d at 1372 n. 6 (collecting cases from sister circuits where delays in treating pain ranging from several hours to three weeks were adequate to support a claim for deliberate indifference).

As such, the Defendant doctors' argument that a "failure to cure a condition that existed prior to incarceration while providing a significant amount of treatment to the plaintiff is not deliberate indifference" misses the point. Dkt. 107, at 3. Zirko is not alleging that the Stateville medical director tried, but failed, to cure his medical condition, and no liability can inure on that basis. Rather, the plaintiff contends, as per his multiple grievances, that he failed to receive ***any*** medical treatment for these problems for more than nine months after his initial request for an appointment with Dr. Ghosh.

Furthermore, according to the complaint, Dr. Ghosh retired as Stateville medical director sometime after March 2011. Defendant Dr. Bautista replaced Dr. Ghosh as the medical director and examined the plaintiff on July 27, 2011. However, at this appointment, Dr. Bautista neither

examined nor prescribed any treatment for the plaintiff's jaw injury.[3] According to Zirko, as of the filing of his Third Amended Complaint, he has not received medical treatment for his jaw and still suffers from jaw and back pain. These allegations adequately raise an inference that Defendant Drs. Ghosh and Bautista were subjectively aware of Zirko's serious medical need, via the plaintiff's many requests, complaints, grievances, and referrals, and yet acted with deliberate indifference to that condition by failing to examine him for several months after his initial request for an appointment, all while the plaintiff suffered from pain and neurological symptoms caused by the herniated spinal discs.

Accordingly, the plaintiff has adequately stated a claim for deliberate indifference to a serious medical need. Therefore, Defendant Drs. Ghosh's and Bautista's motion to dismiss is denied as to the claim for deliberate indifference.

### 2. Willful and Wanton Conduct

Defendant Drs. Ghosh and Bautista also argue that the plaintiff's state law claim of willful and wanton conduct should be dismissed because that claim "requires that one be a public employee to establish liability." Basing their argument on a reading of 745 ILCS 10/2-202 (Section 2-202 of the Tort Immunity Act), the defendants contend that they are not "public employees" because they were, at all relevant times, employees of Wexford Health Sources, Inc., not the State of Illinois, Dkt. 120, at 2, and therefore a "willful and wanton count based on state law cannot be sustained against them." Dkt. 107, at 2.

The defendants' argument, however, fundamentally misreads the statutory immunity provided by Section 2-202. Section 2-202 provides that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission

---

[3] It is unclear, based on the allegations in the complaint, whether Defendant Dr. Bautista examined the plaintiff's back at this appointment.

constitutes willful and wanton conduct." That is to say, Section 2-202 does not create a cause of action for willful and wanton conduct, but immunizes a "public employee…from liability while enforcing the law *unless* their acts are willful and wanton." *Smith v. City of Chicago,* 242 F.3d 737, 744 (7th Cir. 2001); *see also Shuttlesworth v. City of Chicago,* 377 Ill. App. 3d 360, 365, 879 N.E.2d 969, 974 (Ill. App. Ct. 2007) ("in order to recover from the City…plaintiffs must prove that the officers' conduct…was willful and wanton."). In other words, Section 2-202 "immunizes [public employees from] liability for *negligence.*" *Niebur v. Town of Cicero,* 212 F. Supp. 2d 790, 820 (N.D. Ill. 2002) (emphasis added).

If, as the defendants argue, they are private rather than public employees, their tortious conduct, even if merely negligent, would not be immune from liability under Section 2-202. *See Carter v. Du Page County Sheriff,* 304 Ill. App. 3d 443, 450, 710 N.E.2d 1263, 1268 (Ill. App. Ct. 1999) ("section 2-202 of the Tort Immunity Act does not apply to private employees"). In essence, not only do the defendants mischaracterize the law, but they also advance an argument that, if accurate, would place them in a worse position vis-à-vis the Tort Immunity Act. If the defendants are not "public employees" they are not immune from liability for negligence—a less demanding standard than the willful and wanton conduct alleged by Zirko.

All of that said, the Court does not need to decide whether the defendants are public or private employees at this time. Section 2-202 does not apply to the defendants in this case; Drs. Ghosh and Bautista were not executing or enforcing the law, as required by the provision. 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission *in the execution or enforcement of any law*," (emphasis added)). Thus, the Tort Immunity Act has no application to Count III. That fact, however, in no way implicates the viability of Count III, which does not purport to be based on the Tort Immunity Act. Rather, it appears that the plaintiff, believing that

the statute would provide immunity for negligent acts, may have erroneously invoked the more difficult scienter requirements of that statute, but that error does not implicate the viability of the claim. Defendants make no other challenge to the viability of this claim and, accordingly, the motion to dismiss Count III is denied and the motion of defendants Ghosh and Bautista to dismiss the Third Amended Complaint is denied in its entirety.

### B. Motion to File PLRA Answer by Defendants Hardy, Rabideau, and Baker

Defendants Hardy, Rabideau, and Baker request leave to file an answer pursuant to 42 U.S.C. § 1997e(g)(1) (a "PLRA answer"). They attach to their motion a document that purports to be a "PLRA answer."  It states that defendants Hardy, Rabideau, and Baker "hereby answer Plaintiff's Complain pursuant to the [PLRA], 42 U.S.C. § 1997(e)(g) [sic], and does hereby waive filing an Answer pursuant to the Act . . . ." The document does not include any responses to the allegations of the complaint, but does assert an affirmative defense of good faith.

This is a curious request. Section 1997e(g)(1) provides that

> Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law. Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.

However, the "court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits." 42 U.S.C. 1997e(g)(2). In other words, as the Supreme Court explained, "defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint." *Jones v. Bock,* 549 U.S. 199, 213-14 (2007) (citing 42 U.S.C. § 1997e(g)(1) & (2)). Critical to the success of the plaintiff's claim, of course, is that without a court-ordered reply, "[n]o relief shall be

granted." 42 U.S.C. §1997e(g)(1). But if the court finds that the plaintiff has a reasonable opportunity to prevail on the merits," §1997e(g)(2), then the defendants are required to file an answer to the complaint. The PLRA does not, as defendants seem to suggest, provide for the filing of an abbreviated answer that fails to comport with the rules applicable to responsive pleadings; it does not create or authorize, in other words, a special "PLRA answer." Section 1997e(g)(1) allows a defendant to waive an answer altogether, unless directed to file an answer by the court pursuant to §1997e(g)(2); if an answer is required, nothing in the PLRA suggests that the answer required is anything other than an answer that comports with the federal rules of civil procedure.[4]

The plaintiff argues that the motion should be denied because he has a reasonable opportunity to prevail on the merits of his claims. In particular, the plaintiff notes that Judge

---

[4] The Court has construed the purported "PLRA answer" to be simply a statement that the defendants were waiving their answer to the complaint pursuant to the PLRA—in effect, an offensive motion seeking a determination that the plaintiff's claims did not have a reasonable opportunity for success on the merits, which would be similar to a motion to dismiss. The plaintiff objected to this filing (because absent an answer, the plaintiff's claims against these defendants could not go forward) and, accordingly, the Court reviewed the complaint to assess whether the plaintiff has a "reasonable opportunity to prevail on the merits." Concluding, for the reasons set forth below that the allegations are sufficient in this regard, the Court notified the parties at a status hearing on November 28, 2012, that an order would be issued shortly denying the motion for leave to file a PLRA answer and requiring Defendants Hardy, Rabideau, and Baker to file answers to the complaint within 21 days.

Counsel for those defendants maintained, however, that "the reply is the PLRA answer," which she construed as authorizing the defendants to file, in lieu of a standard answer, "a general denial of the allegations of the complaint." The proposed "PLRA answer," however, does not on its face contain a general denial of the complaint's allegations, but putting that problem to the side, nothing in the PLRA authorizes the filing of a general denial. Rather, § 1997e(g)(1) authorizes defendants to waive the filing of an answer altogether absent an order of the court directing the filing of a reply to the complaint. The Court is now entering that order, and the defendants are required to file an answer that comports with the rules of civil procedure, within 21 days. In that regard, Rule 8(b)(3) authorizes general denials where a party "intends in good faith to deny all the allegations of a pleading," but the Court makes no ruling at this time whether an answer that asserts only a general denial pursuant to this provision is sufficient. The Court notes only that all pleadings are subject to the requirements of Rule 11.

Kendall previously determined that the plaintiff's allegations met this standard after conducting a review of the complaint pursuant to 28 U.S.C. §1915A. *See* Dkt. 5, at 2. Judge Kendall's order, however, addressed only the deliberate indifference claim against Defendant Dr. Ghosh in the plaintiff's initial complaint. That claim is not subject to the motion to file a PLRA answer brought by Defendants Hardy, Rabideau, and Baker. Nevertheless, the plaintiff avers that his Third Amended Complaint meets the same low threshold as his initial complaint, and therefore, the defendants must be compelled to respond.

Accordingly, as with a motion to dismiss, the Court will accept the plaintiff's allegations as true and draw all reasonable inferences in his favor to determine whether the plaintiff "has a reasonable opportunity to prevail on the merits," and therefore, as a consequence, whether the defendants must respond to the Third Amended Complaint.

1. *Deliberate Indifference and Willful and Wanton Conduct by Defendant Hardy*

Zirko alleges that Defendant Hardy knew of his injuries, pain, and lack of medical treatment by Defendant Dr. Ghosh due to the many grievances and formal and informal complaints that the plaintiff filed. Further, Zirko alleges that Defendant Hardy knew that he was experiencing severe pain and additional injury as a consequence of not receiving appropriate medical treatment. Despite this knowledge, Defendant Hardy took no action, which according to Zirko, amounts to deliberate indifference of his serious medical need.

"Since a [§] 1983 cause of action is against a 'person,' in order '[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Snyder,* 444 F.3d at 583 (citing *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)). Therefore, "[t]o be personally responsible [for a constitutional violation committed by a subordinate], an official 'must know about the conduct and facilitate it,

approve it, condone it, or turn a blind eye.'" *Id.* (citing *Gentry,* 65 F.3d at 561, citation and internal quotation omitted). "The plaintiff must show that the [official was] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference.'" *Reed v. McBride,* 178 F.3d 849, 854 (7th Cir. 1999) (citing *Dunigan ex rel. Nyman v. Winebago County,* 165 F.3d 587, 591 (7th Cir. 1999), quoting *Farmer,* 511 U.S. at 837)). Additionally, the plaintiff "must show that the [defendant] acted with reckless disregard toward the serious need by 'inaction or woefully inadequate action.'" *Id.* (citing *Hudson v. McHugh,* 148 F.3d 859, 863 (7th Cir. 1998)).

On one hand, the Seventh Circuit has taught that "the Warden of each prison…is entitled to relegate to the prison's medical staff the provision of good medical care," *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009) (citing *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir. 1993)). Moreover, "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis,* 372 F.3d 218, 236 (7th Cir. 2004).

On the other hand, the Seventh Circuit has explained that if an official has reason to believe, or actual knowledge, that prison doctors are mistreating or *failing to treat* a prisoner, a non-medical official may be "chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *See id.* ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). This case, at least at the pleading stage, falls within the latter of these two Seventh Circuit teachings given that the plaintiff filed multiple grievances and complaints, at least some of which were reviewed and signed by Defendant Hardy.

For instance, Zirko filed two grievances on February 8 and March 10, 2010, complaining of an "arthritic back" and a "compressed disc." Dkt. 1, at 12, 14; *see also Citadel Group Ltd.,* 692 F.3d at 591 (the Court "may consider documents attached to or referenced in the pleading if they are central to the claim," citing *Brownmark Films, LLC,* 682 F.3d at 690). In that grievance, Zirko also stated that he had "composed…at least eleven requests for medical treatment to Dr. Gosch [sic], all to no avail." *Id.* at 12. On the second page of the February 8 grievance, the plaintiff complained that he was, and continues to be, in "severe pain…[and] more often than not unable to walk or move without extreme pain." *Id.* In the March 10 grievance, Zirko explained that he had not received any treatment, and that he had "fallen coming down from…[his] bed several times, once, striking [his] right jaw…on the adjacent table as [his] legs were numb and [he] could not feel them." *Id.* at 15. Defendant Hardy reviewed the February 8 grievance on March 3, 2010 and determined that it was not an emergency and should be submitted "in the normal manner." *Id.* at 12. Defendant Hardy reviewed the March 10 grievance on March 24, 2010, again determining that the grievance did not present an emergency.

Both of these grievances were then reviewed by Defendant Rabideau on April 15, 2010. Defendant Rabideau determined that "[a]ccording to medical records, offender has been referred to see Dr. Ghosh by both Dr. Williams and Dr. Zhang, for above issues and *hasn't been seen yet*. Back brace was ordered according to [medical] records…was issued 4-12-10." *Id.* (emphasis added). On the March 10 grievance, Defendant Rabideau only noted that the plaintiff had been "seen by Dr. Williams on 3-3-10," and that the grievance counselor should "see attached— duplicate grievance/same issues," which referred to the plaintiff's February 8 grievance.

On May 10, 2010, the grievance office received both grievances. Grievance Officer Margaret Thompson reviewed both of the grievances on June 2, 2010. According to the

"Grievance Officer's Report," the "Facts Reviewed" state that "Grievant alleges he he [sic] has been writing to see Dr. Ghosh to no avail." *Id.* at 11. The report then re-states Defendant Rabideau's response that "offender has been referred to see Dr. Ghosh by both Dr. Williams and Dr. Zhang, for above issues and hasn't been seen yet." *Id.* Based only on Defendant Rabideau's response, Grievance Officer Thompson concludes that the "counselor correctly addressed the issue…[n]o additional action necessary." *Id.*

On June 22, 2010, approximately fifteen weeks after Defendant Hardy conducted the emergency review of the plaintiff's February 8 grievance, Defendant Hardy "concurred" with Grievance Officer Thompson's conclusion and "signed off" on the report, despite the fact that, according to the report, Zirko had still not been examined by Defendant Dr. Ghosh. At this point, Defendant Hardy was subjectively aware of the plaintiff's "severe pain" and the additional injuries and neurological symptoms resulting from his herniated spinal discs. Moreover, Defendant Hardy was aware, via the text of the grievances and the grievance process itself, that the plaintiff had been requesting appointments with Dr. Ghosh since September 2009, and, according to the grievance officer's report, had still not been seen by Dr. Ghosh as of June 22, 2010. Based on this record, it is reasonable to infer that Defendant Hardy turned a blind eye to Dr. Ghosh's alleged deliberate indifference. More than that, there is a reasonable inference that Defendant Hardy was aware that Dr. Ghosh was not treating the plaintiff and that a substantial risk of harm existed because of the plaintiff's medical condition, but took no action or "woefully inadequate action" to address the issue. *Reed,* 178 F.3d at 854.

While it is true that "[a]ny right to a grievance is a procedural one, not substantive," *Young v. Wexford Health Sources,* No. 10 C 08220, 2012 WL 621358, at *4 (N.D. Ill. Feb 14, 2012) (citing *Antonelli v. Sheaham,* 81 F.3d 1422, 1430 (7th Cir. 1996)), a plaintiff's "repeated

filing of grievances is nevertheless relevant" to a claim of deliberate indifference. *Id.* at *5. This is so because a prison official has "a duty to prevent and remedy known constitutional violations within his supervision and control." *Id.* Therefore, a "prison official may be liable under…§ 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his…attention via the grievance process." *Id.* (citing *Reed,* 178 F.3d at 852; *Vance v. Peters,* 97 F.3d 987, 993 (7th Cir. 1996)).

The facts in *Young* are similar to those presented here. In *Young,* the plaintiff filed two grievances on October 22 and December 11, 2009. *Id.* at *2. The plaintiff's counselor did not "sign off" on those grievances until November 7, 2009 and January 13, 2010, respectively. *Id.* Both grievances were denied by Defendant Hardy, who determined that neither grievance presented an emergency. *Id.* The plaintiff, who was eventually diagnosed with chronic pancreatitis on May 14, 2010, then "went six months without being seen by medical staff for his medical complaints, from October 2009 to April 2010." *Id.* The *Young* court held that the plaintiff had "articulated a tenable Eighth Amendment claim against Warden Hardy and Counselor Harris," *id.* at *4, explaining that when a plaintiff has "informed correctional officials that he was being denied access to the health care unit, those officials may be liable under…§ 1983." *Id.* at *5.

Similarly, the plaintiff here filed multiple grievances seeking medical attention from Dr. Ghosh. Based on the record before the Court, those grievances were not addressed, and the plaintiff went over nine months before being examined by the medical director. Accepting these facts as true and drawing all reasonable inferences in the plaintiff's favor, these allegations sufficiently state a claim for deliberate indifference against Defendant Hardy. That is to say, for

purposes of the motion for leave to file a PLRA answer, the Court finds that the plaintiff has a reasonable opportunity to prevail on the merits of his claims against Defendant Hardy.

On that same basis, the plaintiff has a reasonable opportunity to prevail on the merits of his willful and wanton claim against Defendant Hardy. Illinois law defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210. "Under Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Directors,* 593 F.3d 507, 514 (7th Cir. 2010) (citing *Krywin v. Chi. Trans. Auth.,* 391 Ill. App. 3d 663, 909 N.E.2d 887, 890 (Ill. App. 2009)). "A willful and wanton claim has the additional requirement that the breach be not merely negligent, but with 'conscious disregard for the welfare of the plaintiff.'" *Id.* (citing *Ortega-Piron ex rel. Doe v. Chi. Bd. of Educ.,* 213 Ill.2d, 820 N.E.2d 418, 423 (Ill. 2004)).

The Seventh Circuit has taught that the "willful and wanton [standard] is 'remarkably similar' to the deliberate indifference standard." *Williams v. Rodriguez,* 509 F.3d 392, 404-05 (7th Cir. 2007) (citing *Chapman v. Keltner,* 241 F.3d 842, 847 (7th Cir. 2001, citing *Payne for Hicks v. Churchich,* 161 F.3d 1030, 1041 n. 13 (7th Cir. 1998)). Given this similarly, and for the same reasons that the plaintiff has already plausibly alleged a deliberate indifference claim, the plaintiff has plausibly alleged that the defendants' omissions with respect to the plaintiff's medical needs were willful and wanton. *See, e.g., Warren ex rel. Warren v. Dart,* No. 09 C 03512, 2010 WL 4883923, at *13 (N.D. Ill. Nov. 24, 2010).

23

Accordingly, Defendant Hardy's motion to file a PLRA answer is denied, and he must respond to the plaintiff's complaint pursuant to §1997e(g)(2).

### 2. *Retaliation by Defendants Rabideau and Baker*

In order to prevail on a claim for retaliation, the plaintiff must demonstrate that, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012) (citing *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009)).

Here, the plaintiff has sufficiently pled allegations to satisfy these elements at the pleading stage, and therefore has a reasonable opportunity to prevail on the merits of his claim for purposes of § 1997e(g)(2). First, the plaintiff alleges that he used the Stateville grievance system to address his back and jaw injuries and lack of medical treatment. "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Id.* (citing *Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010)). Defendant Rabideau knew about these grievances (and presumably this lawsuit filed on December 22, 2010) because she investigated and "signed off" on two of the grievances attached to the plaintiff's initial complaint. *See* Dkt. 1, at 12, 14.

Second, the plaintiff alleges that he suffered a deprivation likely to deter the exercise of First Amendment activity in the future when he did not receive an extension of his employment assignment, but every other inmate under the defendants' supervision and control did. Defendant Rabideau allegedly explained that the plaintiff did not receive an extension because "employment assignments last only for one year." Dkt. 96, at 13. That may be true. However, an "act in retaliation for the exercise of a constitutionally protected right is actionable under Section

1983 even if the act, when taken for different reasons, would have been proper." *Gomez,* 680 F.3d at 866 (citing *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir. 1987)). Based on these allegations, it can be inferred that Defendant Rabideau was aware of the plaintiff's grievances and lawsuit and that her failure to extend his employment assignment (in contrast to the extensions granted to the other two prisoners) was a punishment motivated by (at least in part) the plaintiff's First Amendment activity. Similarly, it is reasonable to infer that Defendant Baker, who was also allegedly involved in the employment decision, was aware of the plaintiff's multiple grievances and complaints from Defendant Rabideau, and acted based on the same motivating factors.

In short, the plaintiff has provided enough details to assert a right to relief above the speculative level and present "a story that holds together." *See Swanson,* 614 F.3d at 404. Accordingly, the plaintiff has a reasonable opportunity to prevail on his retaliation claim. Therefore, Defendant Rabideau's and Baker's motion for leave to file a PLRA answer is denied, and they are ordered to respond to the Third Amended Complaint pursuant to § 1997e(g)(2).

\* \* \*

For the foregoing reasons, Defendant Drs. Ghosh's and Bautista's motion to dismiss is denied in its entirety. Defendant Hardy's, Rabideau's, and Baker's motion for leave to file a PLRA answer is denied, and pursuant to § 1997e(g)(2) those defendants are ordered to answer the Third Amended Complaint.

Enter: November 30, 2012

_____
John J. Tharp, Jr.
United States District Judge

25